UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH AND JOSEPH R. CELLURA, Individually,<br><br>Plaintiffs,<br><br>VS.<br><br>ALLEN D. MOYER and ADMI INCORPORATED,<br><br>Defendants. | Case No.: Number:<br><br>**Civil Complaint for Violations:**<br>1) Intentional Interference with prospective Business Advantage.<br>2) Civil Extortion<br>3) Violation-Title 18 U.S.C. § 875(d)<br>4) Violation-Title 18 U.S.C. § 1951<br>5) False Light Claims<br>6) Defamation Per Se<br>7) Intentional Infliction of Emotional Distress<br>8) Injunctive Relief<br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** Plaintiffs ADMI Inc., ("ADMI-NV"), Tarin Mobile Inc.,("TMIX") and Joseph R. Cellura ("Cellura") by and through their counsel of record as and for their claims in a Complaint against, Allen D. Moyer ("Moyer") and ADMI Incorporated ("ADMI-CA"), hereby alleging as follows:

**II.**
**Jurisdiction and Venue**

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1332 in the complete diversity of citizenship exists among the parties with the amount in controversy exceeding the sum of $75,000.00.

2. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant's businesses is located within the Southern District of New York, where material events giving rise to this claim occurred within the boundaries of this Court.

**III.**
**Supplemental Jurisdiction**

3. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over all state law claims and as against all parties that are so related to claims in this action and within the original jurisdiction of this Court that they form part of the same case or controversy.

**IV.**
**The Parties**

**Plaintiffs:**

4. ADMI Inc., (ADMI-NV) was formed, and incorporated in the State of Nevada and is doing business at 104 Charlton St. 1E Front, New York New York 10014.

CIVIL COMPLAINT

5. Tarin Mobile Inc., ("TMIX") was formed and incorporated in the State of Florida and is doing business at its principal place of business located at 5345 Kietzke Lane, Reno, Nevada 89511.

6. Joseph R. Cellura, is a citizen and resident of the State of Florida was and is a director and officer of TMIX and ADMI-NV.

**Defendants:**

7. ADMI Incorporated ("ADMI-CA") was formed and incorporated in the State of California and is doing business with it principal place of business located at 18525 Sutter Boulevard, Suite 290 Morgan Hill, CA 95037.

8. Allen D. Moyer is a citizen and resident of the State of California was and is a director and officer of ADMI-CA.

## V.
## Introduction

9. Plaintiffs ADMI-NV and TMIX, by their CEO Joseph R, Cellura and Joseph R. Cellura individually bring this action on behalf of the Companies, their investors concerning their business activities and partners nationwide. ADMI-NV is under contact and holds a "Licensing Agreement" entered into in New York State New York among it and its "Strategic Partner" a brand management company headquartered in New York City, wherein the License Agreement provides a right to use their major branded name in the hotel and hospitality industry. The brand and its use in hotel -hospitality have a projected value of at least One Hundred Million ($100,000,000) Dollars.

10. This action challenges Defendant Allen D. Moyer's ("Moyer") illegal acts of extortion as an Intentional Interference with Prospective Economic Advantage, in violation of Title 18 U.S.C. § 875(d) and § 1951in violation of interstate commerce under the Hobbs Act concerning false claims of ownership, his and ADMI-CA's right to contractual benefits concerning the national business undertakings belonging exclusively to ADMI-NV and TMIX under its Licensing Agreement where Plaintiff are seeking to stop Defendant Moyer threats to injure the Companies and CEO Cellura in their names-reputations and standing with ADMI-NV-TMIX, its Strategic Partner and other business partners.

11. The collective Plaintiffs seek immediate injunctive relief which is necessary to prevent irreparable harm by reason of Defendant Moyer's past, present and expressed future threats to injure Plaintiffs in the business and property rights.

CIVIL COMPLAINT

## VI.
## Facts

12. ADMI-NV -TMIX, through their wholly owned subsidiaries, in cooperation with multiple business entities and individuals is designed to provide management services generating income-fees applying a proprietary coordinated booking management platform for hotel guests under themed hotel attractions fixed to strategic destinations World-wide.

13. Defendant Moyer is an architect by training. He claims to be an international commercial real estate development executive, with substantial and successful experience in concept ideation; design; construction; and delivery of experiential spaces, and **"the owner"** of a vast network of globally recognized resources in the entertainment, retail, and hospitality sectors.

14. In or about June 2016 Moyer was introduced to TMIX wherein they engaged in discussions hoping to find common means for hotel and resort development.

15. TMIX offered Defendant Moyer an opportunity to promote his services as an outside consult to its partners and future partners where he could bid his architecture and management services ideation; design; construction; and delivery of experiential spaces on various projects against other bidders in the market.

16. Moyer agreed to offer his services and act as an outside consultant for the Company's projects subject to it a business partners exclusive right of approval for which he would generate proposed project design; construction; and delivery of experiential spaces as a consultant provide billing invoices.

17. Moyer agreed and authorized the use of his bio-imagery and photo display of his previous projects undertaken by him, doing so intending to promote his services as an independent contractor and consultant to TMIX's existing partners and it future partners

18. In 2021, CEO Cellura approached Moyer about providing his services as an outside-independent consultant for ADMI-NV's projects including an RFQ for Notre Dame.

19. Moyer agreed and authorized the use of his bio-imagery and photo display of his previous projects undertaken by him, doing so intending to promote his services as an independent contractor and consultant to ADMI-NV's. existing partners and it future partners.

20. For the use of his biography, his projects and images Moyer was paid outside consulting fees in advance on several projects, more than $200,000. The fees paid were in consideration TMIX-ADMI-NV's express right to use his bio-imagery and photo display of him, his previous projects for inclusion in the TMIX and ADMI-NV business plan and decks promoting his services as an outside consultant and team member.

21.     Moyer knew and was aware the ultimate decision to use his services was to be decided by the existing and future partner for their individual-particular project.

22.     Moyer agreed to provided outside-independent consulting services for any of the TMIX-ADMI-NV projects if a partner or client chose to use his services .

23.     Moyer  provided billing invoices in amount which would have generated fees as an outside consultant for those projects including the Notre Dame RFQ

24.     TMIX and ADMI-NV have begun an internal audit of Moyer's invoices and have determined Moyer has billed or attempted to bill millions of dollars in padded-unearned consulting fees.  Moyer's disclosure of his financial and IRS problems to TMIX resulted in TMIX providing funding, financial resources, and support to bail Moyer out of his working capital deficiencies.

### Moyer Disclosure of his Financial & IRS Problems

25.     After Moyer approved, agreed and  authorized the use of his bio-imagery and photo display of his previous projects undertaken by him, after he received advance payment of $200,000, in or about  2017 Moyer approached CEO Cellura and requested a  bailout for his personal and business debts-ADMI-CA, including impending obligations concerning outstanding taxes  and penalties imposed by the US Internal Revenue Service.

26.     The matter was so serious, that through their established banking partners, TMIX, because Moyer had been referred to as a consultant on several projects, the Company was forced  to continue use of his services and forced to aid him in securing a  One Million ($1,000,000) Dollar up to Five Million $5,000,000 Dollars line of credit.

27.     Plaintiffs are informed and believe, Moyer withdrew over Two Million ($2,000,000) Dollars and then defaulted  on the arranged credit line  wherein TMIX's prior good relationship with its banking partners has now been permanently disrupted.

28.     To reduce exposure to its partners and future partners the Company scaled back its  use and introduction of Moyer to any new projects or partners.

### Moyer's Unauthorized Attempt to  Force ADMI-Nevada  Partners  to Make  Payments to Him Based on  a False Threat to  Negatively Influence the Outcome of a Partner's Project.

29.     Since his credit line default, and Companies scale back Moyer has been, and is desperately motivated to find money anywhere he can, and has now turned to false statement and extortion, threatening he will

destroy or otherwise interrupt TMIX and ADMI-NV's, relationships with its Strategic Partner and other business partners claiming he and ADMI-CA owns the Licensing Agreement. He is obviously motived to stave off creditors.

30. On or about August 2022, Moyer who was in California telephoned Cellura who was in Nevada frantically demanded $76,000 in payment and other benefits from ADMI-NV for his claim that he had working capital deficiencies related to completing ADMI-CA's consulting obligations and that he would seek funds directly from Plaintiffs Strategic Partner.

31. Plaintiffs TMIX and ADMI-NV were fearful or his interrupting their Licensing Agreement with their Strategic Partner and were forced to make a payment of $5,000 to him or suffer the consequences of his false claims and threats to seek money from them.

32. Beyond these threats Moyer has attempted to secretly obtain money from TMIX and ADMI-NV partners where he is not a consultant, threatening to negatively influence the outcome of their contracts and projects with the Plaintiff Companies and our Strategic Partners.

33. On or about September 12, 2022, Moyer who was in California attempted to plunder fees from a TMIX and ADMI-NV investment partner Peter Aaron Maharaj who was in Hawaii.

34. Having no other way to get money Moyer sent an e-mail to Mr. Maharaj requesting a telephone conference:

> As we discussed last week, Joe is currently in Hawaii, I am aware he is there with several of the ▮▮▮▮ Executives. I would encourage you that due to the issues you and Joe have both acknowledged that you not only sign the ADMI Agreement and fund the engagement fee, that you respond the Draft MOU (attached) request a meeting immediately to review and agree to terms. My fear is that after Friday the ▮ option will no longer be available to you.
>
> Please call me as soon as your time permits, thank you!

\* \* \* \*

35. Moyer was seeking advance payment concerning the aforementioned Hawaii property a TMIX-ADMI-NV and Strategic Partner project. Based on the email Mr. Maharaj agreed to a conversation with Moyer.

36. During a 1 hour and 30-minute telephone conversation among Moyer, who was in California, Mr. Maharaj, a TMIX-ADMI-NV potential investor, who was in Hawaii, Moyer made a demand for payment

of Five Hundred Thousand ($500,000) Dollars making numerous false and misleading statements concerning the ownership of TMIX and ADMI-NV contracts and their projects development with their Strategic Partner.

37. Although he knew them to be false and intending to disrupt or otherwise interfere in the TMIX-ADMI-NV, economic interest and relationship with Mr. Maharaj, Moyer told Mr. Maharaj that the subject contracts relied on by Mr. Maharaj concerning the Brand names provided by the Licensing Agreement relating to his projects did not belong to TMIX or ADMI-NV., but were the property of his company ADMI-CA; that neither TMIX or ADMI-NV had the right to use his bio, imagery photos of his prior projects and that CEO Cellura stole them and was using them without his permission or consent.

38. These statements were made under circumstances where Moyer intended a cash grab. The demand was directed at Mr. Maharaj presenting him with a lost opportunity under the Licensing Agreement if he did not comply with his demands.

39. Moyer Never had authority to engage in conduct implying any power to decide the outcome of the TMIX-ADMI-NV., projects and the use of its Licensing Agreement, It is apparent, that the statements made by him on September 12, 2022 in both his e-mail and during the telephone conversation were an improper and unauthorized attempt to interfere in Plaintiffs contract by create a false appearance of authority and power related to TMIX-ADMI-NV business partners placing Plaintiffs in a false and misleading light, a manipulative designed to force the execution of an agreement among him and Mr. Maharaja while attempting to injure Plaintiffs in their property and business reputations.

40. On or about October 8, 2022, Moyer received a letter advising him to cease and desist his false claims of ownership in Plaintiffs License Agreement and attempt to obtain funds from ADMI-NV., and TMIX business partners. Moyer's threats and extortion in response to Plaintiffs' Cease and Desist Letter have been ignored. Moyer continues to issue threaten the Plaintiffs business undertaking, issuing false and misleading disparaging comments to third parties about the principals of ADMI-NV, TMIX, other partners and the ownership of their License Agreement.

41. After receiving the Plaintiff's cease-and-desist letter, on or about September 21, 2022, without a lawful right to do so in an attempt to extort money and valuable property from Plaintiff, Moyer , over the telephone demanded from an ADMI-NV and TMIX Board member and director that unless he received an equity stake similar to the top four executive of these Companies; that unless Plaintiffs made an immediate substantial payment to him of between Eight Million ($8,000,000) Dollars and Fourteen

Million ($14,000.000) Dollars, he would destroy the ADMI-NV and TMIX business relations with its Strategic Partner in New York City; destroy their business and their partners; that he would bankrupt and otherwise destroy the TMIX and ADMI-NV relationships with their Strategic Partner through protracted litigation, whether his claims were true or not; that he would have his attorneys "destroy" all of the work and projects that had been done with both ADMI-NV and TMIX's Strategic Partners; wherein Defendant threatened to communicate directly with them through key director and officer relationships, falsely claiming the ADMI-NV and TMIX's License Agreement was his under the authority of ADMI-CA and that Plaintiffs were using his bio-imagery and prior projects without his consent; that he never authorized, their use they were" stolen" by Plaintiff Cellura.

42  After receiving the cease-and-desist letter on or about October 27, 2022, without a lawful right to do so, in an attempt to extort money and valuable property from Plaintiffs in furtherance of his wrongful acts Moyer sent, via email, a letter from California to ADMI-NV in Nevada demanding payments and property setting a deadline to comply forcing payment from ADMI-NV and TMIX or suffer the consequences.

## Count 1
### (Intentional Interference with Prospective Economic Advantage)

43.  Plaintiffs incorporate by reference paragraphs **1** through **42** inclusive, as though fully set forth herein.

44.  There was an existing economic relationship between Plaintiffs and other third parties with the probability of future economic benefit to Plaintiffs and their business partners.

45.  The Defendant Moyer knew and was aware of the relationship.

46.  The Defendant Moyer intentionally engaged in acts of extortion unlawfully demanding money and other valuable property including stock in Plaintiff Companies.

47.  The Defendant Moyer engaged in this conduct intending to disrupt the relationship or otherwise knew his conduct would disruption of the relationship or was certain or substantially certain to occur.

48.  The conduct – as described above – was independently wrongful, existing as unlawful acts, as the law prohibits and was committed for an unlawful, purpose by unlawful means.

49.   Plaintiffs contractual relationships were disrupted-impaired and otherwise delayed in their performance

CIVIL COMPLAINT

50.     Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts whereby in addition to compensable damages Plaintiffs are entitled to punitive damages.

### Count II
### (Civil Extortion)

51.     Plaintiffs incorporate by reference paragraphs **1** through **50** inclusive, as though fully set forth herein.

52.     Defendant obtained valuable property from Plaintiffs in the form of payments where the defendant wrongfully threatened to and did manipulate the Plaintiffs business and overall of businesses opportunities intending to cause fear among them and their business partners wherein the Defendant falsely claim control of the License Agreement in a way that would cause Plaintiff and their business partner financial harm and harm to their business' reputations.

53.     By reason of the above Defendant unlawfully committed civil extortion by intentionally and unlawfully using fear (the false claims of ownership of the License Agreement and demand consulting fees from its business partners ) to induce Plaintiff to make payment to him.

54.     By reason of the above Defendant unlawfully harmed Plaintiff unlawful threats, wherein Plaintiff are entitled to damages in an amount to be proven at trial.

Defendant took a direct step towards committing extortion by attempting to promote fear in Plaintiffs if they did issue TMIX securities to him, demand a cash payment or he and his attorney would contact Plaintiffs Strategic Partners, threatened to have his attorneys "destroy" all of the work that had been done, threatening to communicate directly with them through key director and officer relationships, falsely claiming the ADMI-NV and TMIX's License Agreement were his under the authority of ADMI-CA and that Plaintiffs were using his bio-imagery and prior projects without his consent; he never authorized, their use they were stolen by Plaintiff Cellura.

55.     The Defendant Moyer engaged in this conduct intending to disrupt the relationship or otherwise knew his conduct would disruption of the relationship or was certain or substantially certain to occur.

56.     The conduct – as described above – was independently wrongful, existing as unlawful acts, as the law prohibits and was committed for an unlawful, purpose by unlawful means.

57.     Plaintiffs contractual relationships were disrupted-impaired and otherwise delayed in their performance.

58. Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts whereby in addition to compensable damages Plaintiffs are entitled to punitive damages.

### Count III
### (Title 18 U.S.C. § 875(d) Violation)

59. Plaintiffs incorporate by reference paragraphs **1** through **58** inclusive, as though fully set forth herein.

60. Defendant, Moyer, was and is acting intentionally, recklessly or was otherwise negligently in violation of Title 18 U.S.C. § 875(d), doing so with intent to extort from Plaintiffs, money-securities and other things of value using interstate transmissions directed to Plaintiffs threating to dispatch knowingly false and misleading transmissions to other third-party contractual partners of Plaintiff ADMI-NV and TMIX falsely claiming his right of ownership of ADMI-TMIX Securities, demanding money without a right where the Defendant has expressly threatened to injure the property and reputations of the Plaintiff intending to cause economic harm and loss of reputational using threats of harm to obtain property to which the Defendant is not entitled.

61. The Defendant Moyer engaged in this conduct intending to disrupt the relationship or otherwise knew his conduct would disruption of the relationship or was certain or substantially certain to occur.

62. The conduct – as described above – was independently wrongful, existing as unlawful acts, as the law prohibits and was committed for an unlawful, purpose by unlawful means.

63. Plaintiffs contractual relationships were disrupted-impaired and otherwise delayed in their performance.

64. Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts whereby in addition to compensable damages Plaintiffs are entitled to punitive damages.

### Count IV.
### (Title 18 U.S.C. § 1951 Violation-Hobbs Act)

65. Plaintiffs incorporate by reference paragraphs **1** through **64** inclusive, as though fully set forth herein.

66. Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts. Defendant, Moyer was and is acting intentionally, recklessly or was otherwise negligently in violation of Title 18 U.S.C. § 1951 for his conduct by obstructing and delaying the advancement of ADMI-NV and TMIX projects to the effect of having an adverse impact on its interstate commerce undertakings by direct and attempted extortion,

CIVIL COMPLAINT

obtaining  Plaintiff s' property, with their consent demanding and receiving payment to ward off his intended harm of them, wherein Defendant Moyer  did so to induced performance by wrongful use of fear- economic harm to Plaintiffs' business and reputations.

67.    In carrying out the plan to extort Plaintiffs property Defendant Moyer used wrongful means to achieve a wrongful objective, wherein Moyer demanded and received money from Plaintiffs ADMI-NV and its contractual partners when he had no lawful claim to the money he sought, using the  threat of bad-faith litigation to exploit Plaintiffs fear of civil liability and economic loss with its Strategic and contractual partners as a means to force payment, despite having been repeatedly advised in writing and orally, that he had no right and that his acts were causing harm to Plaintiffs.

68.    Defendants is liable for extortion and attempted  extortion because his acts sought and continue to seek money and property to which he did not, nor does he have a lawful claim, and could not reasonably believe he had, a claim or right among Plaintiff interstate projects.

69.    Defendant Moyer's  threats and acts of extortion have no nexus to a plausible claim of right wherein Plaintiff have the right to injunctive relief to avoid irreparable harm.

70.    The Defendant Moyer engaged in this conduct intending to disrupt the relationship or otherwise knew his conduct would disruption of the relationship or  was certain or substantially certain to occur and otherwise unlawfully cause fear on the loss of Plaintiffs' business.

71.    The conduct – as described above – was independently wrongful, existing as unlawful acts, as the law prohibits and was committed for an unlawful, purpose by unlawful means.

72.     Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts whereby in addition to compensable damages Plaintiffs are entitled to punitive damages.

### Count V.
### (False Light Claims)

73.    Plaintiffs incorporate by reference paragraphs **1** through **72** inclusive, as though fully set forth herein.

74.     Defendant Moyer publicly disclosed information or material that showed Plaintiffs in a false light.

75.     Moyer' statements were false created by his disclosure which was and would be highly offensive to a reasonable person in Plaintiffs' positions

CIVIL COMPLAINT

76. That there is clear and convincing evidence that Moyer knew or acted recklessly in disregard of the truth and that the disclosure would create a false impression about Plaintiffs.

77. That Plaintiffs were harmed, sustaining harm to their property, business, profession, and occupations.

78. That Moyers conduct was a substantial factor in causing the harm. Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts whereby in addition to compensable damages Plaintiffs are entitled to punitive damages.

### Count VI.
### (Defamations Per Se)

79. Plaintiffs incorporate by reference paragraphs **1** through **78** inclusive, as though fully set forth herein.

80. Plaintiff is informed and believes, and therefore alleges, that Defendant, recklessly and intentionally caused the false publications of defamation, of and concerning Plaintiff, Cellura to third persons.

81. These false and defamatory statements included express and implied accusations that Plaintiff Cellura was acting criminally; that he stole Defendant's bio, imagery photos of his prior projects and that ADMI-NV., TMIX were using them without his permission or consent.

82. These statements were defamatory per se insofar as they related to Plaintiff's profession and trade and honesty, consisting of oral, knowingly false and unprivileged communications, tending directly to injure Plaintiff Cellura in his personal, business and professional reputation.

83. These statements were false and were understood as assertions of fact, and not as opinion. Each of the statements were false and defamatory per se (as set forth above) were negligently, recklessly, and intentionally made and published in a manner equaling malice and abuse without privilege, with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff Cellura, wherein Defendant Moyer intended to cause damage to Cellura's professional and personal reputation, for the purpose of causing third parties to terminate their relationships with TMIX and ADMI-NV.

84. That Moyers conduct was a substantial factor in causing the harm. Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts whereby in addition to compensable damages.

85. For the reason the acts taken toward Plaintiff Cellura were carried out in a deliberate, callous and intentional manner intending to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof

CIVIL COMPLAINT

## Count VII.
### (Intentional Infliction of Emotional Distress)

86. Plaintiffs incorporate by reference paragraphs **1** through **85** inclusive, as though fully set forth herein.

87. Defendant Moyer has engaged in the extreme and outrageous conduct herein above alleged with wanton and reckless disregard of the probability of causing Plaintiff Cellura to suffer severe emotional distress.

88. Moyers acts established a proximate result of the extreme and outrageous conduct engaged in by him, Plaintiff Cellura suffered humiliation, mental anguish and extreme emotional and physical distress all to his general damage in an amount according to proof at trial.

89. Defendants' conduct as herein alleged was malicious and oppressive in that it was conduct carried on by Defendant in a willful and conscious disregard of Plaintiff's rights and subjected him to cruel and unjust hardship.

90. That Moyers conduct was a substantial factor in causing the harm. Plaintiffs suffered economic harm proximately caused by the Defendant's unlawful acts whereby in addition to compensable damages.

91. For the reason the acts taken toward Plaintiff Cellura were carried out in a deliberate, callous and intentional manner intending to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof.

## Count VIII.
### (Injunctive Relief )

92. Plaintiffs incorporate by reference paragraphs **1** through **91** inclusive, as though fully set forth herein.

93. Defendant Moyer's threats and acts of extortion have no nexus to a plausible claim of right wherein Plaintiffs have the right to injunctive relief to avoid irreparable harm.

**DEMAND FOR JURY TRIAL** Plaintiffs hereby demands a trial by jury on all issues so triable of right.

**WHEREFORE,** by reason of the foregoing, Plaintiffs pray for relief as follows:

1. Enjoining Defendant from conducting its business through the unlawful acts and practices described in this Complaint;

2. Requiring Defendant to disgorge its ill-gotten gains, as appropriate;

3. Awarding restitution, as appropriate;

CIVIL COMPLAINT

4. Awarding pre- and post-judgment interest;

5. Damages suffered as a result of Defendant acts, in an amount to be determined at trial and punitive damages;

6. Awarding Plaintiffs all costs and expenses, including attorneys' fees,

7. Granting such other and further relief as this Court may deem necessary, proper, and/or appropriate.

Dated: October 27, 2022

                                          Douglas R. Dollinger, Esq. NYS Bar Code 2354926
                                          Law Offices of Douglas R. Dollinger, PC
                                          570 County Rt 49
                                          Middletown, New York 10940
                                          Phone | 845.741.9363
                                          Email ddollingeresq@gmial.com
                                          Attorney for Plaintiffs